# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 18-cv-60816-BLOOM/Valle

THOMPSON VENTURES, INC.,

     Plaintiff,

v.

BRUNSWICK CORPORATION, *et al.*,

     Defendants.

_____/

## <u>OMNIBUS ORDER ON MOTIONS TO DISMISS</u>

**THIS CAUSE** is before the Court upon Defendant Brunswick Corporation's ("Defendant Brunswick") Motion to Dismiss, ECF No. [46] and Defendant Hatteras/Cabo Yachts LLC's ("Defendant Hatteras") Motion to Dismiss, ECF No. [55]. The Court has carefully considered the motions, the record, the parties' briefs, and the applicable law. For the reasons that follow, both motions are denied.

## I. BACKGROUND

On January 15, 2010, Plaintiff, Thompson Ventures, Inc. ("Plaintiff" or "Thompson") purchased a custom, 2010 Cabo Express yacht manufactured by Defendant Brunswick from Marine Max, Inc. ("Marine Max"), pursuant to a written agreement (the "Purchase Agreement"). ECF No. [1], at ¶ 20. Within 90 days of the sale, Plaintiff entered into service contracts for the vessel with Marine Max, as contemplated by certain provisions of the Purchase Agreement. *Id.* at ¶¶ 22-23.

Plaintiff asserts that Defendant Brunswick, as the boat's manufacturer, was and is the obligor on these service contracts. *Id.* at ¶ 24. Plaintiff alleges that the Purchase Agreement

incorporated several warranties from the vessel's manufacturer, Defendant Brunswick.  *Id.* at ¶¶ 26, 28.  These warranties included: 1) a Cabo Yachts Limited Warranty, which included a 10-year Limited Structural Hull Warranty ("Hull Warranty"), and a Five-year Limited Warranty on Components ("Components Warranty"), and 2) an Extended Marine Protection Warranty, which included an engines warranty ("Engines Warranty").  *Id.* at ¶ 25.  Plaintiff alleges that the Service Agreement was modified on or about September 19, 2011, by Tripper Vincent ("Vincent"), a management level employee of Hatteras/Cabo Yachts, to include the agreement that "any damage to systems, do [*sic*] to saltwater, will be replaced" by the Cabo Yachts division of Brunswick."  *Id.* at ¶¶ 33-35.

Plaintiff asserts that each of the Warranties was subject to different warranty periods. Under the Hull Warranty portion of the agreement, Plaintiff claims that Defendant Brunswick was obligated to "repair or replace…any defect in material or workmanship in the Yacht" that is determined to be a structural hull defect, and that is reported to Brunswick within 10 years of the date of the first retail purchase of the Yacht (the "Hull Warranty Period").  *Id.* at ¶ 48.  Under the Components Warranty portion of the Contract, Plaintiff alleges that Defendant Brunswick is "obligated to 'repair or replace…[a] part or parts…found to be defective in material or workmanship on components manufactured by CABO Yachts,' which defect is reported to Brunswick within five years of the date of the first retail purchase of the Yacht (the "Components Warranty Period")."  *Id.* at ¶ 57.  And lastly, under the Engines Warranty portion of the Contract, Defendant Brunswick was allegedly obligated to "reimburse the approved cost of a Mechanical Breakdown of the Agreement Holder's Watercraft…," which engine problem is reported to Brunswick within five years of the date of the first retail purchase of the Yacht (the "Engines Warranty Period").  *Id.* at ¶ 65.

Plaintiff alleges that it reported defects to Marine Max and Defendant Brunswick and demanded that Defendant Brunswick make repairs or replacements related to those defects within the applicable warranty periods. *Id.* at ¶¶ 51, 60, 68. Plaintiff further claims that despite Thompson Ventures' timely invocation of the Warranties, Defendant Brunswick refused to make the repairs or replacements upon request, and therefore breached the Service Contract. *Id.* at ¶¶ 56, 64, 71.

On October 19, 2018, Plaintiff filed its Second Amended Complaint ("SAC"), ECF No. [44]. In the SAC, Plaintiff asserts claims for breaches of contract and a claim for breach of implied warranty of merchantability. Defendants Brunswick and Hatteras now move to dismiss the Second Amended Complaint asserting that Plaintiff has failed to state claims under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (*quoting Iqbal*, 556 U.S. at 682).

## III.   DISCUSSION

Both Defendants Brunswick and Hatteras argue that Plaintiffs' claims must be dismissed because they are barred by the applicable statute of limitations.  "Generally, whether a claim is barred by the statute of limitations should be raised as an affirmative defense in the answer rather than in a motion to dismiss .  .  .   However, if facts on the face of the pleadings show that the statute of limitations bars the action, the defense can be raised by motion to dismiss."  *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1328 (S.D. Fla. 2012) (citing Cabral v. City of Miami Beach, 76 So.3d 324, 326 (Fla. 3d DCA 2011)); *see also Keira v. U.S. Postal Inspection Serv.*, 157 Fed. Appx. 135, 136 (11th Cir. 2005) ("At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute.") (internal quotation marks and citation omitted).  "A statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations and quotations omitted). "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time barred." *Id.; see also Avco Corp. v. Precision Air Parts, Inc*., 676 F.2d 494, 495 (11th Cir. 1982) (stating that statute of limitations defect can be raised in motion for summary judgment where failure to comply with statute of limitations does not appear on face of complaint).

### a.   Breach of Contract Claims

Both Defendant Brunswick and Defendant Hatteras move to dismiss with prejudice  the respective breach of contract claims asserted against them (Counts One and Three),  arguing that the claims are barred by a five year statute of limitations.  Both Defendants assert that the statute

of limitations began to run on June 13, 2012, the date of an email sent by the Plaintiff, and attached to the SAC as Exhibit 5. This email indicates that Plaintiff was aware of the "leaks in the Subject Vessel and how they have caused corrosion to the component parts within" and identifies "the very same issues that are listed at length in Count I of the Second Amended Complaint." Brunswick Mot. to Dismiss, ECF No. [46], at 5-6; *see also* Hatteras Mot. to Dismiss, ECF No. [55], at 6 ("Based on Plaintiff's own allegations in the Complaint, he was well aware of the alleged problems that he is now suing for on June 13, 2012."). In the SAC, Plaintiff alleges that the Warranties "were incorporated by reference into the Contract" and that "a breach of the Hull Warranty, Components Warranty, or Engines Warranty constitutes a breach of the Purchase Agreement." ECF No. [44], at ¶¶ 26-27. In its response to Defendant Brunswick's Motion, Plaintiff argues that the statute of limitations for a breach of contract claim begins to run when the last element of the cause of action occurs, which would be at the time of the breach. ECF No. [54], at 1. Plaintiff asserts that the statute of limitations therefore occurred when the Defendants refused to make repairs to a timely request by the Plaintiff. *Id.* at 7. Plaintiff claims that because the SAC "does not establish" that the breaches of contract occurred more than five years before this action was filed, the "Defendant[s] cannot meet [their] burden of establishing that this action" is barred by the statute of limitations. *Id.* at 3-4.

Both breach of contract and breach of warranty claims are subject to a five year statute of limitations. *See* Fla. Stat. § 95.11(2)(b). In Florida, the statute of limitations for a breach of contract claim begins to run from "the time of the breach." *Med. Jet, S.A. v. Signature Flight Support-Palm Beach, Inc.*, 941 So. 2d 576, 578 (Fla. 4th DCA 2006) (internal citation omitted). The statute of limitations for a breach of warranty claim, however, begins to run from when the "breach giving rise to the cause of action is discovered or should have been discovered, or when

such warranty expires, whichever occurs first." *Aprigliano v. American Honda Motor Co., Inc.*, 979 F. Supp. 2d 1331, 1340 n.3 (S.D. Fla. 2013) (citing *McKissic v. Country Coach, Inc.*, No. 8:07-cv-1488-T-17EAJ, 2009 WL 500502, at *12 (M.D. Fla. Feb. 27, 2009).

Here, Defendants argue that the accrual date for a breach of warranty claim should apply to Plaintiff's breach of contract claims because the alleged breaches relate to terms of the Warranties. Defendants each cite to two Southern District of Florida decisions, *Kaplan v. Volvo Penta of the Americas, LLC*, No. 14-22226-CIV, 2014 WL 6908423, at *2 (S.D. Fla. Dec. 8, 2014) and *Speier-Roche v. Volkswagen Grp. of Amer., Inc.*, No. 14- 20107-CIV, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014), to support their argument that the earlier accrual date should apply. ECF Nos. [46], at 5-6; [55], at 7-8. The accrual date's application in those cases, however, are inapplicable to the breach of contract claims asserted in the instant case. Neither of the plaintiffs in *Speier-Rocher* or *Kaplan* asserted claims for breaches contract. S*ee Kaplan v. Volvo Penta of the Americas, LLC*, No. 14-22226-CIV, 2014 WL 6908423, at *2 (S.D. Fla. Dec. 8, 2014) (dismissing a claim for breach of express warranty at the motion to dismiss stage due to its being barred by the statute of limitations); *see also Speier-Roche v. Volkswagen Grp. of Amer., Inc.*, No. 14- 20107-CIV, 2014 WL 1745050, at *5 (S.D. Fla. Apr. 30, 2014) (dismissing a claim for breach of written warranty where the statute of limitations had expired).

The Court agrees with the Plaintiff that the statute of limitations for a breach of contract claim begins to run on the date the breach occurred, not the date the defect was or should have been discovered. Because the SAC does not demonstrate on its face that the breach of contract claims are time-barred, Defendants have failed to meet their burden to warrant dismissal of the claims at this stage of the proceedings.

*b. Breach of Implied Warranty of Merchantability*

Defendant Brunswick also argues that Plaintiff's claim for breach of implied warranty and merchantability (Count Two) is barred by the applicable statute of limitations. ECF No. [46], at 7-10. Defendant Brunswick argues that the statute of limitations for a breach of express warranty claim and its accrual date is five years and begins to run from the time the Plaintiff first discovered or should have discovered the defect. *Id.* Plaintiff argues that the statute of limitations would not have begun to run until it discovered the specific "defect giving rise to the cause of action," which it asserts is the "non-adhesion of the vessel's hull and the port reservoir," and that such opportunity to discover the breach was "thwarted by Brunswick employees." ECF No. [54], at 12. The Court agrees with the Defendant that the statute of limitations for a breach of warranty claim begins to run from the date a "defect giving rise to the cause of action is discovered or should have been discovered," not from the date a party fully discovers the extent of the defect. *McKissi*, 2009 WL 500502, at *9 (quoting *Florida Power & Light Co. v. Allis-Chalmers Corp.*, 1989 U.S. Dist. LEXIS 16640, at *14 (S.D. Fla. March 21, 1989).

Defendant Brunswick also argues that the SAC affirmatively alleges that Plaintiff was aware of the defects, noting that the Plaintiff directly alleged that it knew in June of 2012 that it "believed water was coming in the engine from the boat's baitwell and/or from the boat's port hull vent." Brunswick Mot. to Dismiss, ECF No. [46], at 9; *see also* 2d Am. Compl., ECF No. [44], at ¶ 101. Plaintiff also attached an email dated June 13, 2012 (the "Email"), to the SAC, which outlines a number of issues, including the leak issues occurring on the vessel. *See* ECF No. [44-5]. Conversely, Plaintiff argues that these events did not trigger the statute of limitations because Plaintiff did not discover the *specific defect*, the "hull-reservoir non-adhesion," until 2016. ECF No. [54], at 11-12. Plaintiff, however, "cannot rely on [its] lack of knowledge of the

specific cause or nature of the defect to protect [it] from the running of the limitations period." *Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988) (citing *Kelley v. School Board of Seminole County,* 435 So. 2d 804, 806-07 (Fla.1983)). Moreover, the Florida Supreme Court has previously considered such arguments and found them to be without merit. *See Kelley,* 435 So. 2d at 806 (holding that a plaintiff could not rely "on a lack of knowledge of the specific cause to protect it from the running of the statute of limitations" where the plaintiff was previously put on notice that the defect existed).

Nonetheless, dismissal on statute of limitations grounds is appropriate only if it is "apparent from the face of the complaint" that the claim is time-barred. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Here, Plaintiff has alleged facts sufficient to support a claim that the statute of limitations may have been tolled based on the doctrine of fraudulent concealment. A plaintiff seeking to toll the statute of limitations as a result of fraudulent concealment "must allege ... (1) successful concealment of the cause of action, (2) fraudulent means to achieve that concealment, and (3) plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of his claim." *Burr v. Philip Morris USA Inc.*, No. 8:07-CV-01429-MSS, 2012 WL 5290164, at *3 (M.D. Fla. Sept. 28, 2012), aff'd, 559 F. App'x 961 (11th Cir. 2014) (citing *Berisford v. Jack Eckerd Corp.,* 667 So. 2d 809, 811–12 (Fla. 4th DCA 1995)). The "fraudulent means" alleged must go beyond mere non-disclosure, and must constitute active and willful concealment. *Raie v. Cheminova, Inc.,* 336 F.3d 1278, 1282 n. 1 (11th Cir. 2003). A complaint alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. Pro. 9(b). This requires the plaintiff to "plead the who, what, when, where, and how" of the allegedly fraudulent statements or omissions, though the "specific facts related to the defendant's specific state of mind when the allegedly

fraudulent statements were made" need only be alleged generally. *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1237 (11th Cir.2008).

Here, in the SAC, Plaintiff has alleged that on July 31, 2018, Vincent, knowingly told Plaintiff false information, which included that "there was no problem with the area of the engine room vents" and that "water was not getting through there and into the engine room." ECF No. [44], at ¶¶ 110-111. Plaintiff further alleges that Brunswick "knowingly and fraudulently concealed the existence of the "catastrophic problem" and "purposefully made" Plaintiff believe that water was not getting into the engine room through the vent (*Id.* at ¶ 113.), in order to induce the Plaintiff to "forgo searching the interior of the boat" (*Id.* at ¶ 114.). Plaintiff claims Defendant Brunswick made these false misrepresentations because Defendant knew "they would cause Plaintiff not to demand an expensive repair that Brunswick was obligated to make" (*Id.* at ¶ 116.), and because it would "delay[] the filing of a lawsuit" (*Id.* at ¶ 117). In light of the inclusion of these allegations, the Court finds that the Plaintiff has sufficiently and with particularity alleged facts of fraudulent concealment. Plaintiff has alleged the who, what, when, where, and how" of the allegedly fraudulent statements. Accordingly, the Court cannot determine from the face of complaint that the limitations period has run, and thus, dismissal of Plaintiff's claim for breach of implied warranty and merchantability (Count Two) is inappropriate at this stage of the proceedings. *See Caplen v. Guardian Life Ins. Co. of Am.*, 1996 WL 1057652 *4, No. 96–8359–CIV (S.D. Fla. Oct. 22, 1996) (stating that statute of limitations may be raised on motion to dismiss only if court can determine from face of complaint that limitations period has run).

IV.    **CONCLUSION**

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1.   Defendant Brunswick Corporation's Motion to Dismiss the Second Amended Complaint, **ECF No. [46]**, is **DENIED**.

2.   Defendant Hatteras /Cabo Yachts LLC's Motion to Dismiss the Second Amended Complaint, **ECF No. [55]**, is **DENIED.**

3.   Defendants shall answer the Second Amended Complaint, ECF No. [44], **no later than February 8, 2019**.

**DONE AND ORDERED** in Miami, Florida, this 28th day of January, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record